**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| BEAT KITCHEN ON THE RIVERWALK, LLC, | |
| Plaintiff, | Case Number: 1:25-cv-15081 |
| | Judge: Hon. Thomas M. Durkin |
| CITY OF CHICAGO; MICHELLE WOODS, NANCY VILLAFRANCA, LOTIKA PAI, ANDREW FORBES, JENNIFER KELLY, JAIME VIRAMONTES; and HAIRE'S GULF SHRIMP INCORPORATED, | Magistrate Judge: Daniel P. McLaughlin |
| Defendants. | |

**BEAT KITCHEN'S CONSOLIDATED OPPOSITION TO**
**DEFENDANTS' RULE 12(b)(1) AND 12(b)(6) MOTIONS TO DISMISS**

i

## Table of Authorities

*Adarand Constructors, Inc. v. Peña*, 515 U.S. 200 (1995) .................................................33

*Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*,
499 F.3d 663, 667 (7th Cir. 2007). ..........................................................................5

*Alcorn v. City of Chicago*, 17 C 5859,
2018 WL 3614010 (N.D. Ill. July 27, 2018)........................................................10, 18

*Alvarado v. Litscher*, 267 F.3d 648 (7th Cir. 2001) ........................................................31

*Jacobs v. City of Chicago*, 215 F.3d 758 (7th Cir. 2000) ................................................31

*Am. Nurses' Ass'n v. State of Ill.*, 783 F.2d 716 (7th Cir. 1986) ....................................10

*Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440 (7th Cir. 2009).......................4

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .....................................................................5

*Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977)..................................................................35

*Atkins v. City of Chicago*, 631 F.3d 823 (7th Cir. 2011) ...................................................7

*Barwicks v. Dart*, No. 14-CV-8791, 2016 WL 3418570 (N.D. Ill. June 22, 2016)............18

*Barnett v. City of Chicago*, 99 C 5622, 2001 WL 103432 (N.D. Ill. Jan. 31, 2001)..........11

*Baskin v. City of Des Plaines*, 138 F.3d 701 (7th Cir. 1998)............................................16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)........................................................5, 12

*Bilek v. Fed. Ins. Co.*, 8 F.4th 581 (7th Cir. 2021) ...........................................................5

*Bochra v. Dep't of Educ.*, No. 22-2903, 2024 WL 808061 (7th Cir. Feb. 27, 2024) .........29

*Boyd v. Vill. of Carol Stream*, 99 C 6514, 2000 WL 1700124 (N.D. Ill. Nov. 13, 2000)...25

*Brown v. Budz*, 398 F.3d 904 (7th Cir. 2005)..................................................................12

*Brown v. Illinois Dept. of Pub. Aid*, 318 F. Supp. 2d 696 (N.D. Ill. 2004) ........................23

*Calhoun v. Ramsey*, 408 F.3d 375 (7th Cir. 2005) ...........................................................13

*Charleston v. Bd. of Trustees of Univ. of Illinois at Chicago*,
741 F.3d 769 (7th Cir. 2013) ....................................................................................29

*Chapman v. Yellow Cab Coop.*, 875 F.3d 846 (7th Cir. 2017) ...........................................6

*Chicago Transit Authority v. U.S. Dep't of Transp.*,
2026 WL 810912 (N.D. Ill. Mar. 24, 2026) ..............................................................28

*City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989) .......................................................10

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)...........................................................35

*Collins v. Centers for Medicare & Medicaid Services*, 24-2557,
2025 WL 599630 (7th Cir. Feb. 25, 2025) ..................................................................6

*Crockett v. WKM Auto., Inc.*, 23-CV-14899,
2025 WL 886171 (N.D. Ill. Mar. 21, 2025) ..............................................................27

*Daigre v. City of Harvey*, 04CV4224, 2009 WL 2371727 (N.D. Ill. July 30, 2009) .........21

*Danahy v. City of Chicago*, 24 CV 449, 2025 WL 2977743 (N.D. Ill. Oct. 22, 2025)......23

*Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622 (7th Cir. 2009) ...............16, 17, 19

*Davis Companies v. Emerald Casino, Inc.*, 268 F.3d 477 (7th Cir. 2001) .........................35

*Duff v. Grandberry*, No. 14 C 8967, 2017 WL 2424236 (N.D. Ill. June 5, 2017) .............10

*Dunnet Bay Constr. Co. v. Borggren*, 799 F.3d 676 (7th Cir. 2015) .................................34

*Evans v. City of Chicago*, 10 C 542, 2010 WL 3075651 (N.D. Ill. Aug. 5, 2010).............18

*Fix v. City of Chicago*, 21-CV-2843, 2022 WL 93503 (N.D. Ill. Jan. 10, 2022) .................6

*See Flinn v. City of Evanston*, No. 24-cv-4269, Dkt. #37, slip op.
(N.D. Ill. Mar. 27, 2026) (Kness, J) ..................................................................11, n. 2

*Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012) ...............................27, 36, n.2

*Gernetzke v. Kenosha Unified Sch. Dist. No. 1*,
274 F.3d 464, 468 (7th Cir. 2001) ...............................................................10

*Gill v. City of Milwaukee*, 850 F.3d 335 (7th Cir. 2017) .......................................13

*Harmon v. Gordon*, 712 F.3d 1044 (7th Cir. 2013) ...............................................8

*Harris v. Kashi Sales, LLC*, 609 F. Supp. 3d 633 (N.D. Ill. 2022) (Johnston, J) .................8

*Harrison v. City of Chicago*, 05 C 2680, 2005 WL 3542576 (N.D. Ill. Dec. 22, 2005) ....18

*Harrison v. Illinois Dept. of Transp.*, 10-CV-4674,
2011 WL 2470626 (N.D. Ill. June 21, 2011) .........................................21

*Hershinow v. Bonamarte*, 735 F.2d 264 (7th Cir. 1984) ........................................8

*Hewitt v. Helms*, 482 U.S. 755 (1987) ..............................................................34

*Higgs v. Carver*, 286 F.3d 437 (7th Cir. 2002) .....................................................5

*Hildebrandt v. Illinois Dept. of Nat. Res.*, 347 F.3d 1014 (7th Cir. 2003) ........................22

*Hodges by Hodges v. Pub. Bldg. Comm'n of Chicago*,
864 F. Supp. 1493 (N.D. Ill. 1994) .........................................................28

*Hope v. Pelzer*, 536 U.S. 730 (2002) ..............................................................31

*House v. City of Milwaukee*, 21-CV-0866-BHL,
2022 WL 16715835 (E.D. Wis. Nov. 4, 2022) ........................................28

*Jacobs v. City of Chicago*, 215 F.3d 758 (7th Cir. 2000) .........................................31

*Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989) ............................................15

*Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014) ...........................................18

*Julie Hagan & Brandon Hagan, et al. v. City of Chicago Bd. of Educ., et al.*,
1:25-CV-05807, 2026 WL 879760, at *6 (N.D. Ill. Mar. 30, 2026) ...............19

*Killinger v. Johnson*, 389 F.3d 765 (7th Cir. 2004) ..............................................16

*LaPorta v. City of Chicago*, 14 C 9665,
2016 WL 4429746, at *2 (N.D. Ill. Aug. 22, 2016) ....................................15

*Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*,
507 U.S. 163 (1993) ...........................................................................18

*Mann v. City of Chicago*, 13 CV 4531,
2017 WL 3970592 (N.D. Ill. Sept. 8, 2017) .............................................15

*Marcavage v. City of Chicago*, 467 F. Supp. 2d 823, 830 (N.D. Ill. 2006),
*rev'd in part on other grounds and remanded*, 659 F.3d 626 (7th Cir. 2011) ..............16

*Matthews v. Columbia Cty.*, 294 F.3d 1294 (11th Cir. 2002) ...................................22

*McCormick v. City of Chicago,* 230 F.3d 319 (7th Cir. 2000) ..................................10

*McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273 (1976) .................................31

*McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873 (7th Cir. 2012) ......................23

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) .....................................34

*Mercedez Benz Fin. Services USA, LLC v. City of Chicago*, 24 CV 4840,
2025 WL 1158651 (N.D. Ill. Apr. 21, 2025) ............................................14

*Midwest Fence Corp. v. U.S. Dep't of Transp.*, 840 F.3d 932 (7th Cir. 2016) ................34

*Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978) ...................9

*Naperville Smart Meter Awareness v. City of Naperville*,
69 F. Supp. 3d 830 (N.D. Ill. 2014) ........................................................27

*Ne. Florida Chapter of Associated Gen. Contractors of Am. v.
City of Jacksonville, Fla.*, 508 U.S. 656 (1993) .....................................20, 33

*NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293 (7th Cir. 2018) ....................36

*N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*,

163 F.3d 449 (7th Cir. 1998) ....................................................................................26

*Offutt v. City of Danville, Illinois*, 646 F. Supp. 3d 970 (C.D. Ill. 2022) ...........................27

*Pelfresne v. Vill. of Williams Bay*, 917 F.2d 1017 (7th Cir. 1990).......................................8

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) ...................................................10, 16

*Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256 (1979) ....................................22, 23

*Petropoulos v. City of Chicago*, 448 F. Supp. 3d 835 (N.D. Ill. 2020) ..............................14

*Quinn v. Bd. of Educ. of the City of Chicago*, 234 F. Supp. 3d 922 (N.D. Ill. 2017).........28

*Redfield v. Cont'l Cas. Corp.*, 818 F.2d 596 (7th Cir. 1987) ..............................................36

*Reinebold v. Bruce*, 18 F.4th 922 (7th Cir. 2021)...............................................................23

*Rossidoc LLC v. City of Chicago*, No. 23C13410,
2026 WL 251901 (N.D. Ill. Jan. 28, 2026) ......................................................................29

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*,
786 F.3d 510 (7th Cir. 2015) ............................................................................................26

*Saad v. Vill. of Orland Park*, 11 C 7419, 2012 WL 2721942 (N.D. Ill. July 9, 2012).......27

*Scott v. City of Chicago*, 195 F.3d 950 (7th Cir. 1999) .........................................................5

*Seiwert v. Spencer-Owen Cmty. Sch. Corp.*, 497 F. Supp. 2d 942 (S.D. Ind. 2007) .........19

*Smith v. Illinois Sch. Dist. U-46*, 120 F. Supp. 3d 757 (N.D. Ill. 2015).............................17

*Smith v. Dart*, 803 F.3d 304 (7th Cir. 2015).......................................................................36

*Spearman v. Elizondo*, 230 F. Supp. 3d 888 (N.D. Ill. 2016) ..............................7, 9, 12, 17

*Staub v. Proctor Hospital*, 562 U.S. 411 (2011) .................................................................20

*Sung Park v. Ind. Sch. of Dentistry*, 692 F.3d 828 (7th Cir. 2012)......................................29

*Swanson v. Citibank, N.A.*, 614 F.3d 400 (7th Cir. 2010) ............................................6, 7, 20

*Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073 (7th Cir. 1987) ..........................30

*Tamayo v. Blagojevich*, 526 F.3d 1074 (7th Cir. 2008).........................................................6

*The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) ...................................29

*Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335 (7th Cir. 2024) .......................................36

*Thomas v. United States*, 189 F. Supp. 3d 682 (N.D. Ill. 2016).........................................36

*Tierney v. Vahle*, 304 F.3d 734 (7th Cir. 2002)..................................................................26

*Towns v. Peoples Gas Light & Coke Co.*, 23-CV-16316,
2024 WL 4590595 (N.D. Ill. Oct. 28, 2024).............................................................23, 24

*United States v. Viveros-Chavez*, 114 F.4th 618 (7th Cir. 2024) ........................................22

*United States v. White*, 879 F.2d 1509 (7th Cir. 1989)..........................................................8

*U.S. ex rel. Hall v. Tribal Dev. Corp.*, 100 F.3d 476 (7th Cir. 1996) ...........................35, 36

*Vaia v. West*, 24-CV-5191, 2026 WL 686633 (N.D. Ill. Mar. 11, 2026) ...........................27

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) ..........7, 23, 25

*Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500 (7th Cir. 1999)...............................................7

*WBY, Inc. v. City of Chamblee, Georgia*, 155 F.4th 1242 (11th Cir. 2025).......................35

*White v. City of Chicago*, 829 F.3d 837 (7th Cir. 2016)......................................................18

*Wilkins v. City of Chicago*, 736 F. Supp. 3d 616 (N.D. Ill. 2024)......................................28

*Yick Wo v. Hopkins*, 118 U.S. 356 (1886)............................................................................7

MCC § 10-36-145(d) ........................................................................................................2, 30

42 U.S.C. § 2000d-4a(1) ......................................................................................................28

**Introduction to Consolidated Opposition**

The City Defendants' arguments, stripped down, are that the process does not matter if the City Defendants can now offer a neutral-sounding explanation for the result. That is inconsistent with pleading standards. It is not a basis for dismissal. On these facts, it must be rejected.

The Complaint alleges that Plaintiff, Beat Kitchen on the Riverwalk, LLC, submitted the only timely, complete, and compliant proposal for Location 2; that City officials then privately invited Haire's to submit a late and deficient proposal after the public solicitation deadline governed by the Chicago Municipal Code; that the Evaluation Committee ("EC") Members, primarily composed of 2FM and OBM personnel, scored and advanced that late proposal under different and unlawful race-priority standards; and that those same unlawful standards – driven by City policies and statements – shaped the entire evaluation and award process from top to bottom. The Complaint specifically supports those allegations. They must be accepted as true.

The City tries to avoid those allegations by breaking the Complaint into pieces: the policies are "aspirational," the EC Members only "recommended," race-based comments were isolated, the late proposal was just discretion, and the City's internal draft letters supply "alternative explanations." But the Complaint must be read as a whole. When it is, a coherent sequence is alleged: a rule-bound public solicitation was altered midstream, the field of competition was changed, race was a positive factor, and the contract went to the vendor who entered the process late – because of the City's policies and directives, and actionable conduct of the City Defendants.

That is enough to state claims under the Equal Protection Clause, Section 1981, Title VI, the Due Process Clause, Monell, and Plaintiff's related state law and equitable theories. It also defeats qualified immunity at the pleading stage. No reasonable official needs a factually identical case to know that officials cannot manipulate a government contracting process based on race.

1

Haire's motion fares no better. The relief Plaintiff seeks is directed at the continuing effects of the challenged award, including the contract Haire's received through the allegedly unlawful process. The validity and consequences of that award cannot be resolved in Haire's absence.

At this stage, Plaintiff need not prove the City's motive, disprove the City's explanations, or establish every fact through discovery it has not yet received. It need only allege a plausible claim. It has done so. The motions should be denied.

**Key Facts**[1]

**I.       The Rule-Bound Solicitation and Plaintiff's Compliant Proposal.**

The City issued the 2024 Riverwalk RFP, a public solicitation for Riverwalk concession licenses, and was governed by defined requirements and evaluation criteria set forth in the RFP and applicable Municipal Code provisions, including MCC § 10-36-145(d). Compl., Dkt. 1, ¶¶ 15-18, 32-38. Those rules required that proposals be submitted through the publicly noticed process and evaluated under uniform criteria. *Id.*, ¶¶ 32-38, 41-45. The solicitation established a deadline, after which proposals were to be evaluated based on those criteria. *Id.*, ¶¶ 34-38.

Plaintiff timely submitted a proposal for Location 2 that complied with the RFP's requirements. *Id.*, ¶¶ 46-52. No other timely, compliant proposal for Location 2 was submitted through the publicly noticed process. *Id.*, ¶¶ 50-52, 55. Under the governing rules, Plaintiff's Proposal was therefore the only compliant proposal properly before the City for evaluation for Location 2. *Id.*, ¶¶ 50-52, 55-57. At that point, the process was a rule-bound evaluation of submitted proposals, not an open-ended exercise of discretion untethered from the RFP's requirements. *Id.*, ¶¶ 32-38, 41-45.

---

[1] All citations to record materials are to the ECF page numbers.

2

**II.     The City's Post-Deadline Intervention and Altered Evaluation Process.**

After the submission deadline passed, City officials deviated from those rules. *Id*., ¶¶ 58-60. Instead of limiting the evaluation to timely proposals, the City solicited and accepted Haire's Late Proposal after the deadline and outside the publicly noticed process. *Id*., ¶¶ 61-66, Ex. H, Dkt. 1-8. The City and EC Members then evaluated Haire's Late Proposal against Plaintiff's timely and compliant submission. *Id*., ¶¶ 66-70, Ex. C, Dkt. 1-3. By introducing a post-deadline proposal into the evaluation, the City altered the field of competition set by the RFP. *Id*., ¶¶ 58-60, 66-70.

The Complaint further alleges that the City did not apply the RFP's criteria uniformly. *Id*., ¶¶ 71-78. Instead, the Evaluation Committee Members applied different standards to different bidders, disregarded disqualifying deficiencies in Haire's Late Proposal, and manipulated the scoring process – including how proposals were evaluated and ranked – so that Haire's Late Proposal could be advanced over Plaintiff's compliant submission. *Id*., ¶¶ 71-78, 80-88. These actions were not consistent with a neutral application of established rules; they reflect departures from those rules in the evaluation and scoring process itself. *Id*., ¶¶ 71-78, 80-88.

**III.     The Policy Framework Governing the Procurement and Federally Funded Program.**

Those departures occurred – as alleged – within a defined policy regime where the City, through the Mayor and his Mayor's Office, OERJ, and OBM, implemented race-conscious directives governing budgeting, procurement, concessions, and decision-making, including the Budget Equity Tool, mandatory Racial Equity Action Plans, other policies like Healthy Chicago 2025, We Will Chicago, and the Mayor's Reparations Task Force Executive Order. *Id*., ¶¶ 29-37.

Those directives are not alleged as abstract values statements. The Complaint alleges that they were operational expectations communicated to and understood by 2FM, OBM, and the EC Members responsible for the 2024 Riverwalk RFP. *Id*., ¶¶ 37, 47-49. The Mayor's

3

contemporaneous public statements reinforced the same point: City contracting and economic opportunities were to be used to direct benefits to Black Chicagoans, and senior departmental authority – including the 2FM Commissioner and Budget Director, both appointed by the Mayor – was structured to achieve that objective. *Id*., ¶¶ 38-46.

Against that backdrop, Plaintiff alleges how the procedural departures take on their full meaning. The EC Members did not merely make a scoring mistake or use discretion. They solicited and evaluated a late, deficient proposal from Haire's, elevated that proposal over Plaintiff's timely and compliant proposal, tracked and emphasized Haire's racial identity, and intentionally scored the proposals in a way that aligned with the City's race-priority directives. *Id*., ¶¶ 66-79, 86-88.

The challenged conduct also occurred within a federally funded municipal program. The Complaint alleges that the Riverwalk was historically funded through federal assistance and that the City, 2FM, and OBM continued to receive federal financial assistance at all relevant times. *Id*., ¶¶ 22–28. The City expressly acknowledged in the 2024 Riverwalk RFP that the evaluation and contracting process would comply with Title VI. *Id*., ¶ 9; Ex. A, Dkt. 1-1, pp. 13-14.

The Complaint alleges far more than a one-off procurement dispute. It alleges a rule-bound public solicitation administered by federally funded City departments under race-conscious municipal directives, followed by procedural departures and score manipulation that displaced and injured Plaintiff, the only timely and compliant proposer. *Id*., ¶¶ 47-49, 66-88, 97-100.

## Legal Standards

**FRCP 12(b)(1)** motions challenge the Court's subject matter jurisdiction, and where, as here, Defendants raise facial challenges to the Complaint, the Court's review is limited to the Complaint, and well-pleaded allegations must be accepted as true. *See, e.g., Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009).

**FRCP 12(b)(6)** motions test the sufficiency of the Complaint but require only the *minimum facts* needed to put Defendants on fair notice of the claims. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("fair notice").

Important here, too, is that the Court must accept all well-pleaded facts as true, and draw all reasonable inferences in Plaintiff's favor, *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 584 (7th Cir. 2021), and read the Complaint as a whole, not in isolation, and not parsed allegation by allegation. *See, e.g., Scott v. City of Chicago*, 195 F.3d 950, 952 (7th Cir. 1999).

The standard is *plausibility – not probability*, *not particularity*, *not proof –* and a claim is plausible when the facts permit a reasonable inference that Defendants may be liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 556 (complaint proceeds even if recovery unlikely, so long as reasonable expectation discovery will reveal supporting evidence).

The bottom line is that dismissal is appropriate only where the allegations are so conclusory or "sketchy" that they fail to provide fair notice. *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

## Argument

### I.      Defendants Generally Ignore Pleading Standards and Rely on Waived Arguments.

The City Defendants, in particular, replace these standards rather than apply them – demanding proof instead of plausibility, crediting their preferred explanations over Plaintiff's allegations, and isolating fragments of the Complaint instead of evaluating it holistically. What is more, the City advances critical "arguments" without citation to proper authority, and bury substantive points in footnotes or present them in a perfunctory and underdeveloped manner. This the City Defendants cannot do.

5

### A. The City Defendants Rewrite the FRCP 12(b)(6) Standard.

At nearly every turn, the City Defendants ask this Court to do what it cannot at this stage: credit their explanations, weigh competing inferences, and isolate allegations rather than evaluate the Complaint as a whole. That is not FRCP 12(b)(6).

Nor is it what *Twombly* and *Iqbal* require – those cases did not abrogate notice pleading – and the Seventh Circuit has cautioned that those decisions "must not be overread," because a complaint need only provide sufficient facts to give defendants fair notice of the claims and their basis. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008). *See also Fix v. City of Chicago*, 21-CV-2843, 2022 WL 93503, at \*2 (N.D. Ill. Jan. 10, 2022), quoting *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017) (even after *Iqbal* and *Twombly*, it is inappropriate for district court to demand complaints contain all elements, factors, or facts corresponding to each).

The question is whether the Complaint, taken as a whole, plausibly alleges entitlement to relief – not whether the City's competing explanations are more persuasive. Courts do not choose between competing explanations or credit a defendant's preferred narrative at the pleading stage. *See, e.g., Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (rejecting competing explanations; plausibility asks if the alleged story "holds together," not if it is more likely than defendants' version); *Collins v. Centers for Medicare & Medicaid Services*, 24-2557, 2025 WL 599630, at \*2 (7th Cir. Feb. 25, 2025) (alternative explanations do not prevail at pleadings stage).

The City's arguments illustrate the problem. They offer alternative explanations for the challenged conduct – characterizing the private solicitation of Haire's Late Proposal as permissible "discretion," the Evaluation Committee as merely "recommendatory," and the outcome as the product of neutral criteria – and ask the Court to accept those explanations over the Complaint's allegations. *See, e.g.*, City Br., Dkt. 47-1, pp. 18-20, 22-24, 25-28.

6

But the Complaint alleges Plaintiff submitted the only timely and compliant proposal for Location 2; that the City then privately invited and accepted Haire's Late Proposal after the deadline; that EC Members scored Haire's Late Proposal under different standards; and race-conscious policies and statements informed the process. Those must be accepted as true.

The City Defendants also attempt to break the Complaint into pieces – attacking timing, scoring, race-based statements, and the Location 1 recommendation in isolation – while ignoring the coherent sequence of events those allegations describe. *See, e.g.*, City Br., Dkt. 47-1, pp. 14 (timing of Mayor's statements), 15-16, n. 5 (Location 1 recommendation), 22-24, 25-27. The plausibility inquiry asks whether the alleged story "holds together," not whether each allegation, in isolation, can be explained. *Swanson*, 614 F.3d at 404; *Spearman v. Elizondo*, 230 F. Supp. 3d 888, 892 (N.D. Ill. 2016) (rejecting "divide-and-conquer" arguments). And the alleged story need not be shown, at this stage, by any high probability like preponderance of the evidence. *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

The existence of discretion – which the City claims as unfettered under the 2024 Riverwalk RFP – also cannot defeat Plaintiff's claims, because discretion may not be exercised in a discriminatory manner. *Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886) (discriminatory enforcement of even facially neutral process prohibited); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977) (explaining pertinent circumstantial evidence and that plaintiff not required to prove action rested solely on racially discriminatory purposes).

Where, as here, the claims turn on facts and inferences about how and why the process unfolded, the Complaint may not be terminated by FRCP 12(b)(6). *Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 503 (7th Cir. 1999).

**B.** **The City Defendants – by Failing to Develop or Support Numerous Arguments – Waive Them.**

The City Defendants' divide-and-conquer approach is not just wrong, it is revealing. Unable to address the Complaint as a whole, the City Defendants default to unsupported assertions, undeveloped arguments, and points buried in footnotes. But arguments unsupported by authority or presented in a conclusory or perfunctory fashion are waived. *See, e.g., Hershinow v. Bonamarte*, 735 F.2d 264, 266 (7th Cir. 1984) (even argument raised in brief but presented in a "perfunctory and undeveloped" manner is waived); *United States v. White*, 879 F.2d 1509, 1513 (7th Cir. 1989) (footnoted argument waived); *Pelfresne v. Vill. of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990); *Harmon v. Gordon*, 712 F.3d 1044, 1053 (7th Cir. 2013); *Harris v. Kashi Sales, LLC*, 609 F. Supp. 3d 633, 642 (N.D. Ill. 2022) (Johnston, J) (collecting Seventh Circuit cases). Presumably to preserve arguments for reply, despite a nearly 30-page brief, that tactic should be rejected.

Plaintiff identifies other waived and unsupported arguments below, but highlights here a few recurring defects central to the City Defendants' positions:

- Policy irrelevance (no authority): The City asserts that Citywide policies and directives are irrelevant because they are not procurement-specific, yet cites no authority imposing such a limitation. City Br., Dkt. 47-1, pp. 13-15 (addressing "Healthy Chicago 2025," "We Will Chicago," 2024 Black Reparations Task Force Executive Order, Racial Equity Action Plans, and statements by the Mayor).

- Discretion/Timing/Outcomes (no authority): The City suggests that timing, isolated outcomes, or the existence of discretion defeats Plaintiff's claims, again, without citation. City Br., Dkt. 47-1, pp. 25-28 (addressing procedural due process claim); 29 (asserting qualified immunity).

- Footnoted arguments: The City buries substantive arguments in footnotes rather than developing them in the text. City Br., Dkt. 47-1, pp. 14 at n. 4, 16 at n. 5, 17 at n. 6, 20 at n. 7, 22 at n. 8, 23 at n. 9, 27 at n. 10-11, 33 at n. 12-13.

Those are not developed arguments. They are unsupported assertions. They should be waived.

8

**II.     The Complaint Plausibly Alleges Municipal Liability Under Monell Through Policies and Directives Implemented by City Hall, Delegated to Departments, Executed by the Evaluation Committee, and Ratified by the City.**

The City's Monell argument is simple: no policy, no pattern, no policymaker, and no causal link. City Br., Dkt. 47-1, pp. 12-18. It fails because it ignores how the allegations actually fit together: a coordinated, top-down set of policies and directives carried out through delegated departments and decisionmakers, executed in the 2024 Riverwalk RFP process, and ratified in the final award to Haire's – the precise sequence that injured Plaintiff. Compl., Dkt. 1, ¶¶ 29-88. This structure – especially at this early stage – sufficiently implicates all three avenues to municipal liability under *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978). *Spearman*, 230 F. Supp. 3d at 893 (complaint properly referred to set of interrelated, mutually reinforcing practices which contributed to alleged civil rights violations).

**A.     The Complaint Plausibly Alleges Express Policies and Directives.**

The City's lead argument – that Plaintiff identifies no actionable policy – misstates the Complaint, which identifies specific, operational policies <u>and</u> directives, including the Budget Equity Tool, Racial Equity Action Plans, Black Reparations Task Force Executive Order, <u>and</u> contemporaneous official capacity remarks, prescriptions, and pronouncements that the City requires departments to implement in decision-making for procurement, contracting, and economic opportunities, and that plausibly constituted and caused the discrimination alleged. Compl., Dkt. 1, ¶¶ 29-46, 47-88. The Complaint does not stop there, but alleges how they move:



Compl., Dkt. #1, ¶¶ 12-16, 29-36. That chain – running from the Mayor, through City Hall, to the officials who carried out the subject procurement – does exactly what Monell requires at this stage.

Monell is not about labels ("policy" vs. "goal"), but about who made the decision and whether that decision represents municipal action. *See, e.g., Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986); *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 468 (7th Cir. 2001) (cautioning "policy or custom" terminology potentially misleading; emphasizing Monell about if challenged decision, whatever its form, made by official at apex of authority for that action). The Complaint alleges classic Monell municipal action and liability. *McCormick v. City of Chicago,* 230 F.3d 319, 325-26 (7th Cir. 2000) (reversing dismissal as plaintiff need not plead facts City was "moving force" behind discrimination, particularly because FRCP 9(b) says "malice, intent, knowledge and other condition of mind of a person may be averred generally").

The City's response – that these policies are not "tied to contracting" or lack "constitutionally suspect language" – is beside the point. Monell does not require a policy to be facially unconstitutional. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989) (rejecting that only unconstitutional policies are actionable). It is enough that a policy, as implemented, causes a constitutional violation. *Am. Nurses' Ass'n v. State of Ill.*, 783 F.2d 716, 727 (7th Cir. 1986).

But the City persists, asserting "courts do not rely on a plaintiff's description of the policy at the pleading stage; instead, they examine the policy's actual language to determine whether it is plausible that the language, when applied, caused a plaintiff's injury." City Br., Dkt. 47-1, p. 13. The City's authority is inapplicable and misplaced. *Duff v. Grandberry*, No. 14 C 8967, 2017 WL 2424236, at *3 (N.D. Ill. June 5, 2017) (summary judgment); *Alcorn v. City of Chicago*, 17 C 5859, 2018 WL 3614010, at *17 (N.D. Ill. July 27, 2018) (rejecting Monell theory built on little more

10

than generalized phrases from short executive order, with no allegations of implementation, decision making, or causal connection to the harm).

Again, Plaintiff identifies multiple formal, Citywide policies and directives that, together, plausibly show race-preferred considerations infiltrate city contracting and economic decisions:

- Mandatory racial equity action plans for all departments, including 2FM and OBM.
- Budget Equity Tool, which requires evaluation through race-conscious lens.
- Executive directive for Black Reparations Agenda (reflecting formal, race-conscious municipal policy).[2]
- Contemporaneous public statements from the Mayor and others directing that economic opportunities be used to benefit a specific racial group.

Frankly, even if Plaintiff had not so clearly laid out the express policies plausibly linked to the discrimination here, the Complaint still survives. *Barnett v. City of Chicago*, 99 C 5622, 2001 WL 103432, at *3 (N.D. Ill. Jan. 31, 2001) (finding sufficient allegations even where not stated with particular clarity). In the end, whether these directives governed the 2024 Riverwalk RFP is, at minimum, a factual issue that cannot be resolved on a motion to dismiss anyway.

## B. The Complaint Plausibly Alleges a Widespread Practice.

The City next argues that Plaintiff has not alleged a widespread practice. City Br., Dkt 47-1, pp. 15-16. But the Complaint challenges, as discussed, a coordinated, citywide practice implemented and executed at the Mayor's direction that governs how departments, including 2FM and OBM, evaluate and award concession contracts. Compl., Dkt. 1, ¶¶ 2-7, 12-16, 29-46. That system operates across multiple departments directly taking policy orders and direction from the Mayor, Mayor's Office, and OERJ, directs how proposals are scored, and produces race-preferred

---

[2] At least one federal court, in this District, is already dealing with a race-based Reparations policy, and very recently denied a motion to dismiss, illustrating that citywide, race-conscious directives are operative policies capable of driving governmental decision-making. *See Flinn v. City of Evanston*, No. 24-cv-4269, Dkt. #37, slip op. (N.D. Ill. Mar. 27, 2026) (Kness, J).

outcomes. *Id*. At the pleading stage, Plaintiff need not identify multiple identical instances where *that system* produced the same result. *Spearman*, 230 F. Supp. 3d at 893.

The City wants to hold Plaintiff to proof, not plausibility, while conveniently ignoring whatever information it mistakenly believes is missing is uniquely within the City's control and properly the subject of discovery. *Twombly*, 550 U.S. at 545, (2007) (complaint need only show "reasonable expectation that discovery will reveal evidence"); *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005) (conclusory pleading "should be liberally viewed" where allegations concern "matters peculiarly within the knowledge of the defendants"). The City's use of "the Evaluation Committee's May 15, 2024 draft recommendation letter" reinforces how its argument is built on fact issues. The City says the letter defeats widespread practice because a "white-owned business" was recommended for Location 1, City Br., Dkt. 47-1, pp. 15-16, Ex. 2, n.5, but that is a characterization that omits the context, *i.e.*, the recommended proposer (Neighborly) was a timely, compliant applicant, *and received the highest score for Location 1*. Dkt. 1-5, pp. 2-8. That outcome is entirely consistent with the Complaint's allegations. Indeed, the same materials the City relies on reveal the system Plaintiff challenges, including – as alleged – how the Evaluation Committee coordinated outcomes across different opportunities. Compl., Dkt. 1, ¶¶ 47-88.

On this point – Location 1 was part of the Riverwalk Community Marketplace, a City-created program designed to support smaller, more diverse vendors in a lower risk setting. *Id*., ¶ 52. *See also* 2024 Riverwalk RFP, Compl., Ex. A, Dkt. 1-1, p. 4 ("Civic District" differentiates between Location 2 and the "Community Marketplace"), p. 5 (Location 1 specific to "Community Marketplace"; Location 2 makes no mention). That program, by design, might allow for greater flexibility and discretion. Location 2, by contrast, was a full-service restaurant location, far larger in scale, more capital-intensive, and materially different in both risk and operational demands,

particularly given the public investment in the Riverwalk. Yet, in scoring Location 1, an unidentified EC Member directed: "propose location 2 to [Haire's]." Dkt. #1-5, pp. 1, 3. That is a contemporaneous directive, not after-the-fact explanation, and shows a process where proposals were positioned to reach predetermined results.

The scoring aligns with that directive, too. Despite submitting a similarly deficient and late proposal, Haire's score increased from 299 for Location 1 – the Community Marketplace – to 381 for Location 2 – the full-service restaurant location. *Id.*, 1-5, p. 1. Even if the City had broader discretion within the Community Marketplace, that discretion does not extend to steering outcomes across different opportunities, particularly where those decisions implicate publicly funded assets like the Riverwalk. At a minimum – and drawing all reasonable inferences in Plaintiff's favor – that disparity plausibly reflects the execution of policy directives implemented and controlled by City Hall through OBM, 2FM, and the EC Members. This is especially so where the Location 2 evaluation materials expressly reference race, confirming that neither the steering of Haire's to Location 2 nor the scoring was random. Compl. Dkt. 1, ¶¶ 67, 69, 76-78; Ex. F, Dkt. 1-6.

The law relied on by the City does not help it, either. None of the cases involve a citywide policy in procurement, contracting, or economic opportunity, but all address a single, disconnected incident by line-level municipal employees. *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) (plaintiff alleged "practice" of coercive interrogations but *no system* and *no structure*); *Calhoun v. Ramsey*, 408 F.3d 375, 379-80 (7th Cir. 2005) (challenging single incident under incomplete policy, requiring proof of broader pattern; not based on centralized system directing conduct across municipality); *Davis v. Joliet Twp. High Sch. Dist. 204 Bd. of Educ.*, 24 CV 1701, 2025 WL 3268487, at *4 (N.D. Ill. Nov. 24, 2025) (isolated misconduct within one-off employee-student relationship, not centralized, multi-department system directing decision making);

13

*Mercedez Benz Fin. Services USA, LLC v. City of Chicago*, 24 CV 4840, 2025 WL 1158651, at \*2-3 (N.D. Ill. Apr. 21, 2025) (single vehicle impound dispute and shifting Monell theories; no allegation of coordinated, citywide system governing decision making across departments); *Petropoulos v. City of Chicago*, 448 F. Supp. 3d 835, 841 (N.D. Ill. 2020) (random, unexplained fluke; City mistakenly mailed plaintiffs' private documents to a violent inmate, which neither side could explain – and plaintiffs alleged no system, pattern, or repeat conduct whatsoever).

The City's argument treats Plaintiff's allegations as if they describe a series of disconnected incidents and faults Plaintiff for not pleading more of them. That is neither what the Complaint alleges nor how Monell operates. In *Monell*, in fact, the plaintiffs did not rely on a catalogue of prior incidents; they challenged the execution of a municipal policy – implemented through City officials – that caused the alleged injury. 436 U.S. at 690-91. Plaintiff alleges the same here: a coordinated, top-down framework directing how contracting decisions are evaluated and awarded across departments, carried out by the very officials responsible for the procurement. And where, as here, the challenged conduct is the system itself – the structure through which decisions are made – Plaintiff is not required to identify multiple identical outcomes produced by that system.

The Complaint does what Monell requires, and more than what FRCP 12(b)(6) demands.

**C.      The Complaint Plausibly Alleges Action by Final Policymakers, Delegated Decisionmakers, and Ratification of the Result.**

Separate from its allegations of express policies and widespread practices, the Complaint pleads municipal liability through policymaker action. Compl., Dkt. 1, ¶¶ 29-46. It alleges that the Mayor set the governing directives for how contracting and economic opportunities – including this procurement – were to be administered; that those directives were carried out through departments and officials with delegated authority over the 2024 Riverwalk RFP process; and that

the resulting decision – reached through that process – was approved and implemented by City leadership. That is sufficient at the pleading stage.

The City's next argument – that Plaintiff alleges title, but not authority – is a strawman. City Br., Dkt. 47-1, pp. 16-18, n. 6. The Complaint does not rely on titles. It alleges the Mayor set and directed Citywide policy governing procurement, and that those directives were implemented through OERJ, 2FM, OBM, and the EC Members who carried out the evaluation and recommendation process. Compl., Dkt. 1, ¶¶ 29-46. That is the type of decision by a final policymaker that triggers municipal liability. And at this stage, Plaintiff need not produce evidence of the Mayor's direct involvement in the 2024 Riverwalk RFP. *Mann v. City of Chicago*, 13 CV 4531, 2017 WL 3970592, at *3 (N.D. Ill. Sept. 8, 2017) (prior to summary judgment, "[p]laintiffs do not have to provide evidence of the Mayor's connection . . . to get discovery potentially showing (or not) the Mayor's or his staffs' connection").

Even if the Complaint relied solely on titles, however, that is sufficient at this stage considering the Mayor's statements about contracting and procurement because the only reasonable inference is that the Mayor is the final policymaker here. *LaPorta v. City of Chicago*, 14 C 9665, 2016 WL 4429746, at *2 (N.D. Ill. Aug. 22, 2016) (finding "*hard to take ... seriously*" the City's argument that the Mayor was not a policymaker where he had created a task force to address issues he saw within the CPD) (emphasis added).

Illinois law confirms – not defeats – that analysis. Courts look to state and local law to identify who holds policymaking authority, but the inquiry is functional, not formal, and it simply must be made before the case goes to a jury – not at this early stage. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). And Monell liability attaches not only where a final policymaker acts directly, but where that policymaker sets the governing rules, delegates authority to implement

15

them, or ratifies the resulting decision and its basis. *Pembaur*, 475 U.S. at 481-84 (exercise of executive authority not inconsistent with policymaking). The Complaint alleges all three. It describes a process in which policy is set at the top, implemented through OERJ, 2FM, and OBM, executed through the evaluation process, and carried through to the challenged result.

The City's attempt to isolate the Evaluation Committee or characterize the process as discretionary does not change that anything. Where a policymaker establishes the governing rules and delegates their implementation, the resulting decision is attributable to the municipality – particularly where, as alleged here, the process culminates in approval and execution by senior officials responsible for City contracting. That is ratification.

In any event, whether the Mayor and related entities or individuals function as final policymakers for the challenged conduct is a factual question that cannot be resolved on the pleadings. *Marcavage v. City of Chicago*, 467 F. Supp. 2d 823, 830 (N.D. Ill. 2006), *rev'd in part on other grounds and remanded*, 659 F.3d 626 (7th Cir. 2011) (requiring further development and finding plaintiff "entitled to the opportunity, through discovery, to develop the facts that can show the existence of the policies that they allege are actionable under *Monell*").

The City's authority – largely underdeveloped and divorced from the facts here – reinforces the sufficiency of the Complaint. *Pembaur* confirms – not narrows – Monell liability: when a course of action is directed by those who establish policy, the municipality is responsible whether that action occurs once or repeatedly. 475 U.S. at 481. *Killinger* and *Darchak* – both summary judgment decisions – involved materially different circumstances: no policymaker authority, no delegation, and no ratification of the challenged conduct. *Killinger v. Johnson*, 389 F.3d 765, 772 (7th Cir. 2004) (mayor had no policymaking authority over subject conduct, was applying state

16

law through quasi-judicial role in a single enforcement action where rules established by legislature); *Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 630 (7th Cir. 2009).

*Baskin* – at least procedurally similar – is no different, because the plaintiff alleged only that the City failed to act after the fact, but no policymaker knowledge or approval or system were at issue. *Baskin v. City of Des Plaines*, 138 F.3d 701, 705-06 (7th Cir. 1998). And *Smith* – a retaliation case involving a single employee's internal complaints made within his job duties – fails for exactly what is alleged here: no policy, no system, and no coordinated conduct. *Smith v. Illinois Sch. Dist. U-46*, 120 F. Supp. 3d 757, 776-77 (N.D. Ill. 2015). *Smith* rested on discretionary decisions by mid-level officials in a one-off employment dispute, with no allegation that officials operated at the apex of authority or that any policymaker approved the decision and basis. *Id*.

The point the City cannot avoid is this: whether something is labeled a "policy," "initiative," or "goal" does not matter. What matters is who set the rules and whether those rules drove the decision. If the Mayor set the rules for how City contracts are awarded – and those rules governed the process at issue – that is municipal policy. Full stop.

Finally, the City's argument improperly fragments the process, treating the Mayor, departments, and Evaluation Committee as disconnected. The Complaint alleges the opposite: a single, coordinated system where policy is set at the top, implemented through departments, and carried through to final approval. Monell liability attaches to that system, not isolated pieces of it.

### D. The City's Remaining Monell Arguments Fail Under FRCP 12(b)(6) or Are Waived for Lack of Development.

When read as a whole, the Complaint coherently stacks up proper Monell claims. *Spearman*, 230 F. Supp. 3d at 893 (complaint read as a whole referred to set of interrelated, mutually-reinforcing customs or practices, all of which contributed to violations).

17

Monell claims are not subject to heightened pleading. Plaintiff must only allege – not prove – a policy or practice and a causal connection. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993); *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (applying *Leatherman*); *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (although dismissal affirmed on other grounds, finding district court erred in dismissal of Monell claim as "*Leatherman* holding has survived the Court's later civil pleading decisions in *Iqbal* and *Twombly*, which require the pleader to allege a 'plausible' claim"). *See also Evans v. City of Chicago*, 10 C 542, 2010 WL 3075651, at *2 (N.D. Ill. Aug. 5, 2010) (Monell sufficiently alleged where plaintiff said what practice is and what policy meant to accomplish); *Barwicks v. Dart*, No. 14-CV-8791, 2016 WL 3418570, at *4 (N.D. Ill. June 22, 2016) ("Plaintiff need only *allege* a pattern or practice," not "full panoply of evidence from which a reasonable factfinder could conclude such a pattern exists") (emphasis in original).

The City's other authority does not change any result and merely reflects the unremarkable principle that Monell claims fail where a plaintiff cannot connect a municipal policy to the alleged constitutional deprivation. *Harrison v. City of Chicago*, 05 C 2680, 2005 WL 3542576, at *4 (N.D. Ill. Dec. 22, 2005) (cited by City Defendants); *Alcorn v. City of Chicago*, 17 C 5859, 2018 WL 3614010, at *14 (N.D. Ill. July 27, 2018) (same). Plaintiff does both here.

All remaining Monell arguments do not warrant extended discussion because they are waived or should not be considered at this stage.

The City's suggestion that senior officials lacked knowledge of the process improperly asks the Court to draw inferences against Plaintiff. The Complaint alleges a prolonged process culminating in final approval, during which Plaintiff raised concerns, including through FOIA

18

requests. At minimum, those allegations support a reasonable inference of knowledge and approval, issues that cannot be resolved on a motion to dismiss.

Here, the procurement was carried out through 2FM and OBM – the very departments responsible for administering and approving City contracting – and culminated in a contract executed not days or months, but over one year after the Evaluation Committee's recommendation(s), and during the interim period the City allegedly mishandled FOIA requests by Plaintiff. To the extent the City contends the 2FM Commissioner or Budget Director did not know about Plaintiff's FOIA requests, that negative inference – neither reasonable nor logical based on common sense – cannot be used against Plaintiff at this stage. The timeline alone supports the more reasonable inference that senior officials, including the 2FM Commissioner and Budget Director, knew how the process unfolded and approved it. *Julie Hagan & Brandon Hagan, et al. v. City of Chicago Bd. of Educ., et al.*, 1:25-CV-05807, 2026 WL 879760, at *6 (N.D. Ill. Mar. 30, 2026) (while "should have known" insufficient alone, allegations of notice and inaction or concealment support inference of knowledge), citing *Seiwert v. Spencer-Owen Cmty. Sch. Corp.*, 497 F. Supp. 2d 942, 954 (S.D. Ind. 2007).

Where the process continued to final approval after multiple red flags, knowledge is a reasonable inference. What is more, even if *Darchak* applied at this stage, the Complaint alleges exactly what *Darchak* says is required – ratification.

### III. The Complaint Plausibly Alleges Intentional, Race-Based Discrimination Under the Equal Protection Clause and Section 1981.

#### A. The Complaint Plausibly Alleges Discriminatory Treatment.

The City Defendants' argument – that Plaintiff suffered no "treatment" because the EC Members merely "recommended" an award – like the City's Monell argument, ignores the process alleged – which Plaintiff clearly claims as discriminatory "treatment."

19

The Supreme Court has made clear that the injury is not the ultimate loss of a contract, but the denial of the opportunity to a nondiscriminatory evaluation and process. *Ne. Florida Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 665-66 (1993) (the "injury in fact" in equal protection case is denial of equal treatment resulting from imposition of barrier, not ultimate inability to obtain benefit). That principle forecloses the City's position. If, as alleged, the EC Members manipulated the scoring, criteria, and composition of the 2024 Riverwalk RFP process, that conduct itself is discriminatory treatment, regardless of which official formally issued the final award. And, notably, where a non-decisionmaker performs acts intended to cause an adverse outcome, and those acts are a proximate cause of the ultimate decision, liability attaches. *Staub v. Proctor Hospital*, 562 U.S. 411, 422 (2011).[3]

Properly framed, the Complaint alleges that EC Members were not passive advisors but actors who controlled the process that determined the outcome. Plaintiff specifically alleges they:

- Controlled who could compete by soliciting and accepting Haire's Late Proposal after the deadline despite Plaintiff's compliant Proposal. Compl., Dkt. 1, ¶¶ 62-68.

- Controlled how the Proposals were evaluated by scoring Haire's Late Proposal and inflating scores without material change to the substance of Haire's Late Proposal, while scoring Plaintiff's compliant Proposal lower. *Id*., ¶¶ 72, 74-75.

- Controlled the outcome through the process itself by steering, soliciting, evaluating, and elevating Haire's Late Proposal through the scoring process. *Id*., ¶¶ 66-72, Ex. E, Dkt. 1-5, Ex. F, Dkt. 1-6.

Taken together, Plaintiff plausibly shows the EC Members manipulated both the inputs (who could compete and what proposals were considered) and the outputs (how proposals were scored and ranked) of the process. Plaintiff offers specific, category-based disparities in the process that are sufficient at this stage. *Swanson*, 614 F.3d at 404. That is discriminatory treatment.

---

[3] The City's rule would immunize discriminatory conduct embedded in the evaluation process so long as a different official signs the final award.

The City Defendants rely on cases like *Harrison v. Illinois Dept. of Transp.*, 10-CV-4674, 2011 WL 2470626 (N.D. Ill. June 21, 2011) and *Daigre v. City of Harvey*, 04CV4224, 2009 WL 2371727 (N.D. Ill. July 30, 2009) for the proposition that "[r]ecommending … decisions and making them are very different things." City Br., Dkt. 47-1, pp. 19-20. Neither case holds that participants, like the EC Members, in a structured decision-making process are immune from liability so long as they lack final signature authority. Both turn on the *complete absence* of facts or evidence tying defendants to the challenged decision. The cases were decided on the narrow facts before the courts, and do not establish the sweeping rule the City Defendants advance.

In *Harrison*, the court dismissed claims based on *employment retaliation* against certain defendants because the complaint failed to allege any facts showing they actually participated in or caused the challenged decision, instead relying on conclusory, undifferentiated allegations about multiple actors. 2011 WL 2470626, at *6-7. The case does not stand for a broad rule that recommendations can never constitute actionable conduct. Likewise, *Daigre* – decided on summary judgment after discovery – where the plaintiff failed to produce any evidence that the defendant, who participated in discussions, had any role in or influence over a termination decision in a *retaliation* case. 2009 WL 2371727, at *3. The record affirmatively showed that another official made the decision for independent reasons. *Id*. The case does not provide a categorical rule insulating participants in a decision-making process.

Plaintiff's Complaint does not allege that the EC Members merely "offered opinions," but that they performed the scoring and evaluation required for the award, altered the field of lawful proposers, and produced the recommendation that was adopted and carried forward into the final award. Compl., Dkt. 1, ¶¶ 64, 66-72. That is direct participation in the process – the City's process.

21

The City's argument also improperly conflates individual and institutional liability. Plaintiff brings claims against the EC Members in their individual capacities based on their own conduct taken under color of law, and against the City based on that same conduct as part of the City's discriminatory process. The ultimate question will not be whether the EC Members had final signature authority, but whether they personally participated in and caused the discrimination. *Hildebrandt v. Illinois Dept. of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003). The Complaint alleges that the EC Members acted within – and through – the roles assigned to them in the evaluation process to manipulate the inputs and outputs of that process. That conduct is actionable in their individual capacities <u>and</u> attributable to the City; it does not become immune simply because other officials (who are both part of the "City" as Defendants) formalized the final award.

Plus, the City Defendants are again asking this Court to accept a characterization of the process and disregard Plaintiff's well-pleaded allegations about how that process functioned.

### B. The Complaint Plausibly Alleges Discriminatory Intent.

At the pleading stage, Plaintiff need not prove intent; it must allege facts that permit a reasonable inference that the City Defendants, including the EC Members, acted, at least in part, because of race. That standard is satisfied here.

The City lifts language from two cases that were decided on more developed evidentiary records – *United States v. Viveros-Chavez*, 114 F.4th 618, 624 (7th Cir. 2024) (finding only that statements of one or two legislators "*may not*" be provative of intent of entire body) (emphasis added) and *Matthews v. Columbia Cty.*, 294 F.3d 1294, 1297 (11th Cir. 2002) (addressing Monell liability and ratification) – and tries to convert the cherry-picked language into a pleading stage rule barring any inference of intent. But both cases dealt with legislative, not executive, decisionmakers or addressed governmental, not individual, liability. *See also Pers. Adm'r of*

22

*Massachusetts v. Feeney*, 442 U.S. 256, 279, n. 24 (1979) (from which Defendants cite one line about awareness of consequences; case dealt with entirely different issue, more developed record, and court noted proof of discriminatory intent necessarily relies on objective factors under *Arlington Heights*); *Reinebold v. Bruce*, 18 F.4th 922, 927 (7th Cir. 2021) (summary judgment decision). The cases simply do not stand for the rule the City Defendants claim.

The City Defendants repeatedly reframe the Complaint as alleging only disparate impact or awareness of racial consequences, and cite cases for the unremarkable proposition that such allegations are insufficient, but where, as here, Plaintiff alleges intentional manipulation of a procurement process and affirmative conduct taken to favor a race-preferred vendor, the cases are irrelevant. *Brown v. Illinois Dept. of Pub. Aid*, 318 F. Supp. 2d 696, 699 (N.D. Ill. 2004) (sex discrimination claim; plaintiff alleged no specific facts of personal involvement); *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (complaint alleged only that employer knew system had disparate impact, not that system was adopted because of that impact; case does not apply where City Defendants allegedly acted because of race in structuring or executing the decision-making process itself); *Danahy v. City of Chicago*, 24 CV 449, 2025 WL 2977743, at *4 (N.D. Ill. Oct. 22, 2025) (no allegations whatsoever showing procedural deviations).

Although confusingly stated, the City Defendants seem to suggest that Plaintiff "invited" race-based considerations into the evaluation process by noting its owner's "Latin heritage" in its Proposal. City Br., Dkt. 47-1, p. 22, n. 8. It did not. Plaintiff's description of its business, a Latin-inspired restaurant, does not consent to discrimination or permit the City to alter the rules.

Discriminatory intent may be inferred from circumstantial evidence, including departures from normal procedures, substantive irregularities, and contemporaneous statements. *Arlington Heights*, 429 U.S. at 266-68. *See also Towns v. Peoples Gas Light & Coke Co.*, 23-CV-16316, 2024

WL 4590595, at *5 (N.D. Ill. Oct. 28, 2024) (intent may be alleged "quite generally" and holding it may be inferred, at this stage, from conduct and "suspicious words or actions"). The Complaint alleges all of these indicators:

- <u>Policy-level racial directives</u>: The City, through the Mayor and departments, implemented "racial equity," "budget equity," and related policies directing economic opportunities be steered toward a particular racial group. Compl., Dkt. 1, ¶¶ 5-7

- <u>Contemporaneous race-based statements and action</u>: EC Member Woods expressly stated that it was desirable to award the Location 2 license to a Black-owned business, Id., ¶¶ 69-70, Ex. F, then another EC Member noted that Haire's April 2024 Proposal for Location 1 should be steered to Location 2, Ex. E, Dkt. 1-5 (master scorecard), and then unknown EC Members, but including at least Viramontes, *Id*., 70, Ex. G, Dkt. 1-7, privately solicited Haire's Late Proposal. *Id*., ¶¶ 66-72.

- <u>Departure from procedures</u>: EC Members, including at least Viramontes and Woods, privately solicited and accepted Haire's Late Proposal in violation of the 2024 Riverwalk RFP and governing ordinances. *Id*., ¶¶ 2, 4, 62-68, 70, Ex. G, Dkt. 1-7.

- <u>Manipulation of evaluation criteria and scoring</u>: EC Members then altered how Haire's Late Proposal was evaluated and applied inconsistent scoring that advantaged the race-favored vendor over Plaintiff. *Id*., ¶¶ 4, 16, 72-75.

Plaintiff further alleges that it is "extremely rare for the City, 2FM and/or OBM, to accept late proposals or bids in solicitation and procurement evaluations" and that "[i]t is even more rare, if not completely unprecedented, for the City, 2FM and/or OBM, to actively solicit a late proposal after an RFP deadline, particularly when it already had a timely and responsive proposal from another bidder in hand (*i.e.*, Beat Kitchen)." *Id*., ¶ 87. Plaintiff further alleges that Haire's received maximum or near-maximum scores in categories like operations plan, implementation plan, compensation to the City, financial capability, and green sustainability, even though its proposal remained incomplete, nonresponsive, or identical to its earlier, lower-scored submission. And while, at this point in time the bulk of the allegations are directed at Woods and Viramontes (whose scores increased for Haire's Late Proposal by 34 and 21 points, respectively), the other EC Members – Villafranca, Pai, Forbes (OBM), and Kelly (2FM) – also increased their scores for

24

Haire's Late Proposal by 1, 4, 6, and 16 points, respectively. *Id*., Ex. E. Dkt. 1-5, pp. 2 (master scorecard), 3 (Haire's April 2024 Proposal scores), 8 (Haire's Late Proposal scores). *Boyd v. Vill. of Carol Stream*, 99 C 6514, 2000 WL 1700124, at *10 (N.D. Ill. Nov. 13, 2000) (finding scoring discrepancies between plaintiff and preferred candidate indicative of racial discrimination).

With this backdrop, the City Defendant's characterization of Woods's statement as a "stray remark," and treating procedural irregularities as benign, where intent is inferred from the totality of the circumstances, including "the sequence of events leading up to the challenged decision" and "departures from the normal procedural sequence," *Arlington Heights*, 429 U.S. at 267-68, Plaintiff adequately implicates all EC Members.

The City Defendants' own argument confirms the EC Members acted collectively in scoring and evaluating proposals such that they cannot simultaneously claim that the process was collective but that no individual can be held responsible for participating in it. The sequence is what matters, and Plaintiff alleges that all EC Members personally reviewed, scored, and evaluated proposals, and participated in a process that applied improper criteria and unequal treatment.

## C. The City's "Alternative Explanations" Do Not Defeat Plausibility.

The City Defendants' fallback argument – that there are "alternative explanations" – does not, as they suggest, permit dismissal whenever a defendant can hypothesize a lawful reason for its conduct. It applies only where the complaint itself supplies an obvious, non-discriminatory explanation and lacks factual allegations supporting discriminatory intent.

As a preliminary matter, the City attempts to merge two distinct doctrines – incorporation of documents "central" to a complaint and the "alternative explanation" theory – to, again, rewrite the pleading standard. City Br., Dkt. 47-1, pp. 16 at n. 5, 23 at n. 9. The City Defendants note that Exhibits 2 and 3 were "previously attached" to Plaintiff's state court complaint, which might be

true, but that was a different complaint, sought different relief, and Exhibits 2 and 3, in their entirety, are neither "central to" Plaintiff's Complaint in this case nor capable of authentication or disambiguation without discovery. *Id*., pp. 49-52 (Exhibit 2: May 15, 2024 Letter), 54-58 (Exhibit 3: May 22, 2024 Letter). *See, e.g., Tierney v. Vahle*, 304 F.3d 734, 739 (7th Cir. 2002) (it would "not be cricket" for defendant to use documents that require discovery to win at 12(b)(6)).

Even where documents are properly considered, they do not alter the FRCP 12(b)(6) standard. Courts may consider such materials only to understand what they say, not to resolve factual disputes or credit a defendant's competing narrative. *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998); *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 528–29 (7th Cir. 2015) (explaining pleading burden commensurate with "amount of information available" and court cannot expect plaintiff to "plead information she could not access without discovery"). If the Court is inclined to consider Exhibits 2 and 3 for the purposes relied on by the City, it should convert the motion to one for summary judgment and permit discovery, because both Exhibits raise issues of fact.

Of note, neither letter is signed, and their authorship is unclear – Ex. 2 suggests Viramontes as author, while Ex. 3 appears attributed to all EC Members. Their purpose is also inconsistent: Ex. 2 is labeled a "Negotiations Update," while Ex. 3 is not, and Ex. 3 contains visible edits, suggesting it may be a draft rather than a final document. That raises a further question – where are the final versions, if any – particularly given that Plaintiff issued a FOIA request to the City at this time. As alleged, the City responded to that FOIA on May 29, 2024, yet the later-dated letter includes additional assertions about purported "frustrations" with Plaintiff's prior operations that were not previously noted. Compl., Dkt. 1, ¶ 79, Ex. I, Dkt. 1-9. These inconsistencies go directly

to authenticity, completeness, and reliability. They cannot be resolved without discovery, and they underscore why the City's attempt to rely on these materials is improper.

The other "explanation" – that "from the start, Haire's proposed running a restaurant and wanted to 'create a riverwalk dining experience'" – lacks all credibility when Haire's April 2024 Proposal and Haire's Late Proposal are considered together with the onerous terms of the 2024 Riverwalk RFP for Location 2 versus the menu, offerings, and plans proposed by Haire's. *Compare* Dkt. 1-1, 1-4, and 1-8. This is no "explanation" at all, and certainly not a reasonable one.

Although the City Defendants' cases state general rules, none of those cases apply here. *Naperville Smart Meter Awareness v. City of Naperville*, 69 F. Supp. 3d 830, 842 (N.D. Ill. 2014) (facts in this case are patently more similar to the equal protection claim that was not dismissed than the portion of the claim that was dismissed); *Saad v. Vill. of Orland Park*, 11 C 7419, 2012 WL 2721942, at *5 (N.D. Ill. July 9, 2012) (selective enforcement case); *Crockett v. WKM Auto., Inc.*, 23-CV-14899, 2025 WL 886171, at *5 (N.D. Ill. Mar. 21, 2025) (dismissing claim where complaint alleged only lawful basis for action – reported violations – and contained no facts suggesting differential treatment or discriminatory motive).

Dismissal of claims like those alleged here is entirely inappropriate, especially where there is any suggestion that factual development may assist Plaintiff's case. *Offutt v. City of Danville, Illinois*, 646 F. Supp. 3d 970, 978 (C.D. Ill. 2022), citing *Geinosky v. City of Chicago*, 675 F.3d 743, 748 (7th Cir. 2012); *Vaia v. West*, 24-CV-5191, 2026 WL 686633, at *3 (N.D. Ill. Mar. 11, 2026) (refusing at pleadings stage to credit inferences other than to plaintiff).

## IV. The City – by Virtue of the Riverwalk and Concession Program – is Subject to Title VI.

The City's Title VI argument fails twice – first, because Title VI applies to federally funded municipal operations, and second, the Complaint plausibly alleges intentional discrimination.

First, that Title VI does not apply to municipalities misstates the statute and the cases the City cites. Title VI prohibits discrimination under "any program or activity receiving Federal financial assistance," and defines "program or activity" to include "all of the operations of … a department … or other instrumentality of … local government." 42 U.S.C. § 2000d-4a(1). Title VI applies when a local government administers a federally funded program through its departments.

The City's authorities do not hold otherwise. At most, they address how Title VI claims must be framed, not whether they exist. *Hodges by Hodges v. Pub. Bldg. Comm'n of Chicago*, 864 F. Supp. 1493, 1505-06 (N.D. Ill. 1994) (addressing only whether City itself could be treated as relevant "program," not if municipal operations – like the Riverwalk – within Title VI); *House v. City of Milwaukee*, 21-CV-0866-BHL, 2022 WL 16715835, at *6 (E.D. Wis. Nov. 4, 2022) (summary judgment; treating municipality as not "program or activity," without engaging extension to local government operations); *Wilkins v. City of Chicago*, 736 F. Supp. 3d 616, 622 (N.D. Ill. 2024) (plaintiff did not even address argument that City not covered by Title VI). Plaintiff alleges the Riverwalk, concession program, and both OBM and 2FM, are operations funded and administered through federal money. The City cannot use Title VI as both sword and shield, invoking it to justify race-conscious decision-making, while denying its application when called to account. Courts reject that kind of selective reliance on Title VI. *Chicago Transit Authority v. U.S. Dep't of Transp.*, 2026 WL 810912, at *3, 5 (N.D. Ill. Mar. 24, 2026) (Durkin, J.) (where party acts pursuant to Title VI, party bound by Title VI's requirements and cannot ignore them).

Second, that Plaintiff's Title VI claim fails for lack of discriminatory intent simply repackages the City Defendants' equal protection arguments and fails for the same reasons. Plaintiff does not dispute that Title VI requires intentional discrimination, *Quinn v. Bd. of Educ. of the City of Chicago*, 234 F. Supp. 3d 922, 934 (N.D. Ill. 2017), but, as explained, the Complaint

28

plausibly alleges the City Defendants used intentional race-based decision-making before, during, and after the 2024 Riverwalk RFP evaluation process and award. Plaintiff plausibly alleges intentional discrimination, and its Title VI claim survives.

**V.      Procedural Due Process is Sufficiently Alleged.**

The City's procedural due process argument rests on a mischaracterization of the claim. Plaintiff does not allege a freestanding right to a particular procedure or an entitlement to the concession license. Rather, it alleges that Defendants exercised their authority in a discriminatory and arbitrary manner by manipulating the evaluation process itself – altering the field of competition, applying different standards to different bidders, and injecting race-based considerations to dictate the outcome. That renders irrelevant the cases invoked by the City holding that procedural rules alone do not create a property or liberty interest. *Bochra v. Dep't of Educ.*, No. 22-2903, 2024 WL 808061, at \*2 (7th Cir. Feb. 27, 2024); *Rossidoc LLC v. City of Chicago*, No. 23C13410, 2026 WL 251901, at \*7 (N.D. Ill. Jan. 28, 2026); *Sung Park v. Ind. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012); *Charleston v. Bd. of Trustees of Univ. of Illinois at Chicago,* 741 F.3d 769, 774 (7th Cir. 2013). The City's argument also assumes the existence of discretion eliminates constitutional constraints. Even where government officials retain discretion in administering a public benefit, that discretion may not be exercised in an arbitrary or discriminatory manner, which is what Plaintiff alleges.

The City's "no entitlement" argument likewise ignores Plaintiff's core allegation: that, but for Defendants' manipulation of the process, Plaintiff was the only timely and compliant bidder. At that point, Plaintiff's interest was no longer a unilateral expectation, but a legitimate claim grounded in the rules governing the solicitation and the absence of any competing compliant proposal. *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). The cases the

29

City cites address situations where the government retains and lawfully exercises discretion <u>among competing</u> bids. *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1080 (7th Cir. 1987). The City does not address a scenario where, as here, the government alters the process and applies different standards to defeat the only compliant proposal. Under those circumstances, the City cannot invoke "discretion" to avoid constitutional scrutiny.

The City notably concedes that some process is required. MCC § 10-36-145(d) authorizes the 2FM Commissioner the authority to "negotiate and execute" concession agreements on behalf of the City "<u>after</u> publicly soliciting proposals." City Br., Dkt. 47-1, p. 27 (emphasis added). As alleged, that requirement imposed a baseline constraint: that proposals be evaluated, but only those proposals submitted within the timeline of the public solicitation. Yet Defendants did the opposite – secretly reopening the process after the deadline to invite, accept, and score Haire's Late Proposal, while holding Plaintiff to the stated requirements.

The City's own materials underscore the point. Ex. 3 states that "the Evaluation Committee is recommending that you approve the 2FM Riverwalk team to begin negotiations" for Locations 1 and 2. Dkt. 41-7, p. 55. But the authority to negotiate and execute concession agreements lies with the 2FM Commissioner, subject to the Budget Director. The disconnect between the City's asserted process and its actual conduct further supports Plaintiff's allegation that the process was manipulated to produce a predetermined result. Plaintiff alleges not a mere deviation from procedure, but arbitrary and discriminatory action. Plaintiff is not simply a "disappointed bidder."

**VI.    No EC Member is Entitled to Qualified Immunity – Period – But Especially Not Yet.**

The qualified immunity argument rises or falls with its merits arguments and fails for the same reason: it assumes away the Complaint's well-pleaded allegations. At this stage, the Court must accept those allegations as true, not substitute competing narrative.

30

On those allegations, the asserted rights were clearly established. It has long been beyond debate that government officials may not treat participants in a public contracting process differently based on race or inject race-based considerations into decision making under the guise of otherwise neutral procedures. Nor may officials manipulate an established process – altering the field of competition, applying different standards, or disregarding governing rules – to produce a predetermined outcome. And qualified immunity is a bad ground for dismissal under FRCP 12(b)(6). *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (immunity usually depends on facts); *Jacobs v. City of Chicago*, 215 F.3d 758, 765 (7th Cir. 2000) (Rule 8 does not require plaintiff to anticipate assertion of qualified immunity and plead allegations to defeat it).

Plaintiff does not challenge a discretionary choice among compliant proposals; it alleges that the City Defendants altered the process itself, invited and advanced a non-compliant bidder, and applied different standards in a manner driven by race-based directives. No reasonable official could believe that such conduct is constitutionally permissible. *See, e.g., McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 284-85 (1976) (racial discrimination against any race in contractual or employment contexts violates clearly established equal protection principles)

Nor can the City Defendants avoid liability by pointing to uncertainty at a high level of generality. The relevant question is whether a reasonable official would understand that manipulating a public procurement process and treating similarly situated applicants differently based on race violates clearly established law. *See, e.g., Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (for purposes of qualified immunity, officials can still be on notice that their conduct violates established law even in novel factual circumstances, as notice does not require facts of previous cases be materially or fundamentally similar to situation in question; rather, salient question is

whether the state of the law at the time gives officials fair warning that their conduct is unconstitutional). The answer is yes. Qualified immunity provides no basis for dismissal.

## VII.   Plaintiff's State Law Claims Survive.

### A.   Illinois Civil Rights Act and Equal Protection.

The City's arguments as to Counts VI and VII add nothing. Illinois equal protection and ICRA claims are evaluated under the same standards as their federal counterparts. Accordingly, because the Complaint plausibly alleges discrimination, these claims survive for the same reasons.

The City's additional arguments fare no better. Plaintiff alleges that the challenged conduct was carried out pursuant to municipal policy, practice, and policymaker directives, not merely isolated employee action. Those allegations are sufficient at this stage. And in any event, even if the Court were to limit the availability of certain state-law theories, that would not affect the viability of Plaintiff's federal claims or the core allegations of discriminatory conduct.

### B.   Plaintiff's Certiorari Claim Is Proper.

The City's arguments against certiorari fail for the same reason as its merits arguments: they ignore the Complaint's allegations. Plaintiff alleges that the solicitation was governed by mandatory statutory and RFP-based criteria and that Defendants departed from those requirements by inviting and advancing a non-compliant proposal. Where a decision is constrained by governing standards, it is not insulated from review by labeling it "discretionary." The City's footnoted timeliness argument also cannot be resolved now. The Complaint alleges an evolving process, including post-deadline conduct and disclosures that raise questions about when a final, reviewable decision occurred. That is a factual issue not suitable for dismissal. The City's characterization of the process as purely administrative ignores its adjudicative features. The evaluation involved

32

application of criteria, comparative scoring, and a recommendation that determined the outcome. That is sufficient to invoke certiorari.

**VIII. The Relief Sought Targets the Ongoing Effects of the Award Resulting from an Unlawful Process and Necessarily Requires Haire's Presence.**

### A. Plaintiff Challenges an Ongoing Unlawful Contract.

Haire's contends that this case challenges only a completed procurement and that Plaintiff does not allege a continuing violation of the procurement. Haire's Br., Dkt. 44, pp. 3-7.

The Complaint challenges the validity of a presently operative contract award for Location 2 – an award secured through unlawful conduct – that displaced Plaintiff from the Riverwalk Location 2, and continues to govern who may operate that public asset (to the exclusion of Plaintiff). Compl., Dkt. 1, ¶¶ 17 (Haire's awarded contract at site previously operated by Plaintiff), 50-87, 104-105 (actions taken to ensure Haire's received award), 113 (preventing Plaintiff from obtaining award). The award is for a 3-year term, plus two 1-year extension options, and controls access to and operation of Location 2 today. Compl., Ex. A, Dkt. 1-1, p. 7 (license requires ongoing development and operation of Location 2). Plaintiff challenges an award that replaced it and continues to exclude it from the Riverwalk. That is a present injury.

Consistent with that injury, Plaintiff seeks forward-looking relief directed at the award itself, including "further evaluation and award under the 2024 Riverwalk RFP be conducted through a lawful, transparent, and non-discriminatory process, limited to proposals that were timely, complete, and responsive as of the publicly noticed deadline[.]" *Id.*, ¶ 10. That relief would directly alter the parties' present legal relationship and the ongoing operation of the concession.

The injury is "the inability to compete on an equal footing," not merely the loss of a contract in the past. *Ne. Fla.*, 508 U.S. at 666 (satisfied where plaintiff challenged barriers preventing equal competition); *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 211 (1995). While the Seventh

Circuit has found that standing may be lacking where a plaintiff challenges a procurement process that resulted in no operative award, *Dunnet Bay Constr. Co. v. Borggren*, 799 F.3d 676, 694-95 (7th Cir. 2015) (no standing where contract never awarded, was re-let, and plaintiff could not show any ongoing exclusion or redressable injury), that concern is not present here. Here, the challenged award continues to operate as an exclusionary barrier. Plaintiff's injury persists for as long as the allegedly unlawful award governs access to Location 2. Courts recognize that where a license, permit, or contract remains operative, a plaintiff challenging its legality alleges a present injury sufficient for standing. *Midwest Fence Corp. v. U.S. Dep't of Transp.*, 840 F.3d 932, 940 (7th Cir. 2016) (standing where challenged program affected present ability to compete equally).

Haire's characterization of the Complaint as "backward-looking" equates a completed selection process with the absence of ongoing effects. Article III requires a concrete, continuing injury – not a future hypothetical – and Plaintiff has alleged precisely that.

### B. Plaintiff Seeks Prospective Relief That Would Alter Present Legal Relationships.

Haire's next argument – that Plaintiff seeks only retrospective relief – fails on the face of the Complaint. Plaintiff neither seeks money damages from Haire's nor asks for the concession award. Plaintiff seeks forward-looking relief directed at the continuing unlawful contract, including vacatur and an order requiring compliance with procurement requirements.

Relief that alters or eliminates an operative license or contract is prospective, not retrospective, because it governs the parties' rights going forward. The Supreme Court has explained that declaratory or injunctive relief satisfies Article III when it will "affect the behavior of the defendant toward the plaintiff." *Hewitt v. Helms*, 482 U.S. 755, 761 (1987); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007) (declaratory judgment appropriate to resolve

ongoing legal relations). That standard is met here: an order vacating or enjoining enforcement of the concession would directly alter who may lawfully operate Location 2.

The cases Haire's relies on involve challenges exclusively to past conduct that had ceased and was unlikely to recur. They do not govern cases, like this one, where a challenged government action continues to regulate present rights and Plaintiff alleges ongoing violations of law. *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (no case or controversy because merits dispute already decided and plaintiff merely had "emotional" interest in declaration); *City of Los Angeles v. Lyons*, 461 U.S. 95, 106 (1983) (no standing where failed to allege the challenged police practice was authorized, routinely applied, or likely to recur as to him); *Green v. Mansour*, 474 U.S. 64, 73 (1985) (no claimed continuing violation of law); *WBY, Inc. v. City of Chamblee, Georgia*, 155 F.4th 1242, 1259 (11th Cir. 2025) (club *permanently* closed, owner had no plans to reopen).

Because Plaintiff challenges the present legal validity of a still-operative award and seeks relief that would govern future conduct, this case presents a live controversy.

## C.    Haire's FRCP 12(b)(6) Arguments Miss the Claim.

Haire's Rule 12(b)(6) arguments largely attack claims Plaintiff does not bring. Plaintiff does not allege that Haire's acted under color of state law, violated Section 1983, or engaged in independent wrongdoing. Plaintiff expressly disclaims damages against Haire's and names it solely because it is the beneficiary of – and counterparty to – the challenged contract.

That procedural posture is routine. Where a plaintiff seeks to invalidate or enjoin enforcement of a government contract, the contracting party is not merely a proper defendant but often an indispensable one. The Seventh Circuit has repeatedly recognized that a contracting counterparty is a "paradigm" necessary party where relief would disturb contractual rights. *See, e.g., Davis Companies v. Emerald Casino, Inc.*, 268 F.3d 477, 484 (7th Cir. 2001), quoting *U.S. ex*

35

*rel. Hall v. Tribal Dev. Corp.*, 100 F.3d 476, 479 (7th Cir. 1996) (contracting party "the paradigm of an indispensable party" in action to set aside lease or contract); *Thomas v. United States*, 189 F. Supp. 3d 682, 689-90 (N.D. Ill. 2016) (contracting party required where relief affects interests).

Accordingly, Haire's arguments that it is not a state actor, cannot be subject to mandamus, or did not itself violate procurement rules are beside the point. Plaintiff does not seek merits liability against Haire's, at least not right now. It seeks relief that would bind Haire's current contractual rights, making Haire's presence indispensable. Haire's own alternative request – to remain in the case as a nominal party – effectively concedes this point. If Haire's is necessary to be bound by relief, dismissal under FRCP 12(b)(1) or 12(b)(6) is improper.

## IX.     Conclusion and Request for Relief.

Plaintiff is not required to prove its case or disprove competing explanations. Plaintiff need only allege a plausible claim for relief. *Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1338 (7th Cir. 2024) (all complaint must do is state grievance, details and proofs come later). Plaintiff has. Both Motions should be denied.

Should this Court determine Plaintiff has not met the liberal pleading requirements, Plaintiff requests leave to amend to add facts as may be necessary.[4] *See, e.g., Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) (plaintiff may supplement facts in response if consistent with complaint). *See also NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 310 (7th Cir. 2018) (plaintiff ordinarily given leave to amend); *Redfield v. Cont'l Cas. Corp.*, 818 F.2d 596, 609 (7th Cir. 1987) (failure to provide fair notice should not normally warrant dismissal with prejudice).

---

[4] Such facts likely exist. For example, a recent report describes an Inspector General complaint by a former senior mayoral aide alleging "improper interference in City Hall's contracting process." *See* Fran Spielman, *Johnson says he wasn't aware Gatewood filed IG complaint against top mayoral aides before firing him*, Chi. Sun-Times (Mar. 24, 2026), https://chicago.suntimes.com/city-hall/2026/03/24/brandon-johnson-garien-gatewood-firing-inspector-general-deborah-witzburg-complaint. *Geinosky*, 675 F.3d at 745 ("Perhaps our reference to this recent newspaper story might raise an eyebrow, but it should not").

Dated: April 27, 2026

Respectfully submitted,

By: _Glenn A. Klinger_____

Attorney for Plaintiff

Jonathan D. Leach (ARDC #6283343)
William R. Klinger (ARDC #6295156)
Glenn A. Klinger (ARDC #6319300)
Leach | King | Klinger Law LLC
303 W. Madison Street, Suite 950
Chicago, IL 60606
Tel: (312) 450-0204
jleach@lkklawgroup.com
wklinger@lkklawgroup.com
gklinger@lkklawgroup.com

37